UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:22-00003 |
| | ) | |
| v. | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1028A |
| | ) | 18 U.S.C. § 1343 |
| CONTESSA LYNN HOLLEY | ) | 21 U.S.C. § 841 |

# INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Indictment:

1. **CONTESSA LYNN HOLLEY** was a resident of Pulaski, Tennessee. She was a registered nurse, licensed by the State of Tennessee Board of Nursing (License No. 194098), with active privileges from on or about June 14, 2013, through on or about August 25, 2021.

2. Hospice care was an end-of-life pain management and comfort care program for those with a terminal illness. Hospice patients depended upon the comprehensive services offered by hospice care companies to address the needs associated with their terminal diagnoses, including necessary prescription medications.

3. Compassus, LLC ("Compassus Hospice") was a multi-state hospice care company with locations in the Middle District of Tennessee, including Lawrence County, Tennessee. **HOLLEY** was employed at Compassus Hospice from in or around December 2015, through in or around April 2019.

4. Compassus Hospice contracted with OptumRX, a pharmacy benefit manager ("PBM"). OptumRX, on behalf of Compassus Hospice, received and paid claims for prescription

drugs provided to patients at Compassus Hospice. OptumRX processed such prescription claims using servers located outside of Tennessee.

5. Willowbrook Hospice, Inc., d/b/a Aveanna Hospice ("Willowbrook Hospice"), was a home health and hospice company located in Williamson County, Tennessee. **HOLLEY** was employed at Willowbrook Hospice as a clinical director from February 2021 until her dismissal on September 1, 2021.

6. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States.

7. Under the CSA, the United States Drug Enforcement Administration ("DEA") regulated certain pharmaceutical drugs designated as "controlled substances" because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. *See* 21 U.S.C. §§ 802 and 811.

8. Oxycodone and hydrocodone were prescription opioid medications, classified as Schedule II controlled substances under the CSA, pursuant to 21 C.F.R. § 1308.12.

9. ICD-10 codes (from the *International Classification of Diseases – 10th Revision*) were alphanumeric codes used by health care professionals to represent specific diagnoses. Every disease, disorder, injury, infection, and symptom had an individualized ICD-10 code.

10. Tennessee Code Annotated § 63-1-164 imposed limitations on the prescribing of Schedule II opioid medications, such as oxycodone and hydrocodone. Under subsection (e)(1) of the statute, patients receiving hospice care were not subject to such restrictions and can receive a higher MME/quantity of opioids, as long as the ICD-10 code and the word "exempt" are included on the prescription.

## COUNTS ONE THROUGH THREE

THE GRAND JURY FURTHER CHARGES:

11. Beginning on or about May 1, 2017, and continuing through on or about June 30, 2019, in the Middle District of Tennessee and elsewhere, **CONTESSA LYNN HOLLEY** devised and intended to devise a scheme and artifice to defraud Compassus Hospice, OptumRx, various pharmacies, and others, and to obtain money and property by means of materially false or fraudulent pretenses, representations, and promises, and by the misrepresentation of material facts, and by acts of concealment of the scheme, and in furtherance thereof, used interstate wires, which scheme is further described in the following paragraphs.

12. **HOLLEY** devised and executed a scheme to fraudulently obtain Schedule II controlled substances by knowingly and intentionally submitting unauthorized prescriptions for oxycodone and hydrocodone using the names, identifying information, and hospice benefits of Compassus Hospice patients, as well as the names, signatures, and DEA numbers of two Compassus Hospice physicians. It was part of the scheme and artifice to defraud that **HOLLEY** wrote and filled, or caused the writing and filling of, unauthorized prescriptions in the names of Compassus Hospice patients at multiple pharmacies in Lawrence and Giles Counties, located in the Middle District of Tennessee.

13. **HOLLEY**, as a registered nurse, was not authorized to prescribe Schedule II controlled substances without physician authorization. However, **HOLLEY** filled out and submitted to pharmacies prescriptions for Schedule II controlled substances and listed the names and dates of birth of Compassus Hospice patients on the prescriptions she submitted without authorization from the patients, their caregivers, or the physicians whose names appeared on the prescriptions.

14. **HOLLEY** submitted these fraudulent prescriptions to pharmacies, including a large retail pharmacy located in Pulaski, Giles County, Tennessee ("Pharmacy 1"), causing them to fill the prescriptions and bill the cost of those prescriptions to Compassus Hospice, through OptumRX, which covered the full cost of the medications. The submission and processing of these prescription claims required interstate wire communications.

15. Once the submitted prescriptions had been filled, **HOLLEY** personally picked up the Schedule II controlled substances and paid nothing. **HOLLEY** obtained the oxycodone and hydrocodone for her own benefit, to sell and/or use as she deemed fit. By doing the foregoing, **HOLLEY** knowingly transmitted, and caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, and pictures for the purpose of executing the scheme or artifice.

16. On or about January 2, 2019, in the Middle District of Tennessee and elsewhere, **HOLLEY** filled a prescription for oxycodone using the name and birth date of hospice patient G.R., although the prescription was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to G.R.

17. On or about February 15, 2019, in the Middle District of Tennessee and elsewhere, **HOLLEY** filled a prescription for oxycodone using the name and birth date of hospice patient W.H., although the prescription was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to W.H.

18. On or about April 12, 2019, in the Middle District of Tennessee and elsewhere, **HOLLEY** filled a prescription for oxycodone using the name and birth date of hospice patient W.E., although the prescription was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to W.E.

19. On or about the dates listed below in each count, in the Middle District of Tennessee, and elsewhere, **CONTESSA LYNN HOLLEY**, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce:

| COUNT | Approximate Date | Wire Transmission |
|---|---|---|
| 1 | 1/2/2019 | Submission of claim from Pharmacy 1 through OptumRX for oxycodone prescription, bearing G.R.'s name and RX no. 964756 |
| 2 | 2/15/2019 | Submission of claim from Pharmacy 1 through OptumRX for oxycodone prescription, bearing W.H.'s name and RX no. 978325 |
| 3 | 4/12/2019 | Submission of claim from Pharmacy 1 through OptumRX for oxycodone prescription, bearing W.E.'s name and RX no. 994218 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FOUR THROUGH SIX

THE GRAND JURY FURTHER CHARGES:

20. On or about the dates set forth below, in the Middle District of Tennessee and elsewhere, **CONTESSA LYNN HOLLEY** did knowingly transfer, possess and use, in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the names and dates of birth of the Compassus Hospice beneficiaries identified below, knowing that the means of identification belonged to another person, during and in relation to any felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Wire Fraud in violation of 18 U.S.C. § 1343, as enumerated in 18 U.S.C. § 1028A(c)(5):

| COUNT | Approximate Date | Means of Identification | Description |
|---|---|---|---|
| 4 | 1/2/2019 | Name and D.O.B. of patient G.R. | Prescription for oxycodone 20 mg |
| 5 | 2/15/2019 | Name and D.O.B. of patient W.H. | Prescription for oxycodone 20 mg |
| 6 | 4/12/2019 | Name and D.O.B. of patient W.E. | Prescription for oxycodone 20 mg |

All in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES:

21. Beginning on or about January 2, 2019, through on or about April 12, 2019, in the Middle District of Tennessee, **CONTESSA LYNN HOLLEY** did knowingly, intentionally, and without authority, possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNTS EIGHT THROUGH TEN

THE GRAND JURY FURTHER CHARGES:

22. Beginning on or about May 25, 2021, and continuing through on or about March 28, 2022, in the Middle District of Tennessee and elsewhere, **CONTESSA LYNN HOLLEY**, devised and intended to devise a scheme and artifice to defraud Willowbrook Hospice, various pharmacies, and others, and to obtain money and property by means of materially false or fraudulent pretenses, representations, and promises, and by the misrepresentation of material facts, and by acts of concealment of the scheme, and in furtherance thereof, used interstate wires, which scheme is further described in the following paragraphs.

23. **HOLLEY** devised and executed a scheme to fraudulently obtain Schedule II controlled substances by knowingly and intentionally submitting unauthorized prescriptions for hydrocodone using the names, identifying information, and hospice benefits of current and former Willowbrook Hospice patients, as well as fictitious patients, using the name, signature, and DEA number of a Willowbrook Hospice physician. **HOLLEY** filled and attempted to fill these unauthorized prescriptions at multiple pharmacies in Williamson, Maury, and Lewis Counties,

6

located in the Middle District of Tennessee.

24. Even though **HOLLEY** was not authorized to prescribe Schedule II controlled substances without physician authorization, **HOLLEY** filled out and submitted to pharmacies prescriptions for Schedule II opioid medications in the names of current and former patients.

25. **HOLLEY** included the name, signature, and DEA number of a Willowbrook Hospice medical director ("Physician A"), without the permission of Physician A, on the prescriptions.

26. **HOLLEY** also created fictitious patient names, addresses, and dates of birth to put on the unauthorized prescriptions.

27. **HOLLEY** submitted these fraudulent prescriptions to pharmacies via fax, causing them to fill the prescriptions. The ODP Corporation, d/b/a "Office Depot" and "OfficeMax," was an office supply company with store locations in Franklin, Tennessee and Columbia, Tennessee. The ODP Corporation contracted with etherFAX, LLC to provide internet-based faxing at the self-service machines in the Franklin, Tennessee and Columbia, Tennessee stores. Any fax sent from the self-service machines at the Office Depot store in Franklin, Tennessee or the OfficeMax store in Columbia, Tennessee was routed to its recipient via a network of etherFAX data centers. The etherFAX data centers were located wholly outside of Tennessee.

28. Once the submitted prescriptions had been filled, **HOLLEY** personally picked up the opioid medications, while purportedly acting on behalf of the listed patients. **HOLLEY** obtained the opioid medications for her own benefit, to sell and/or use at her discretion.

29. On or about January 9, 2022, in the Middle District of Tennessee, **HOLLEY** submitted, and caused to be filled, a prescription for hydrocodone using the name and birth date of former hospice patient L.P., purportedly authorized by Physician A, although the prescription

7

was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to L.P.

30. On or about February 4, 2022, in the Middle District of Tennessee, **HOLLEY** submitted, and attempted to fill, a prescription for hydrocodone using the name and birth date of purported patient J.M., purportedly authorized by Physician A, although the prescription was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to J.M.

31. On or about February 22, 2022, in the Middle District of Tennessee, **HOLLEY** submitted, and attempted to fill, a prescription for hydrocodone using the name and birth date of purported patient P.R., purportedly authorized by Physician A, although the prescription was not ordered or authorized, and **HOLLEY** did not provide, or intend to provide, the controlled substance to P.R.

32. On or about the dates listed below in each count, in the Middle District of Tennessee and elsewhere, **CONTESSA LYNN HOLLEY**, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce:

| COUNT | Approximate Date | Wire Transmission |
|---|---|---|
| 8 | 1/9/2022 | Submission of prescription for hydrocodone, in purported patient L.P.'s name, using ODP Fax |
| 9 | 2/4/2022 | Submission of prescription for hydrocodone, in purported patient J.M.'s name, using ODP Fax |
| 10 | 2/22/2022 | Submission of prescription for hydrocodone, in purported patient P.R.'s name, using ODP Fax |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS ELEVEN THROUGH THIRTEEN</u>

THE GRAND JURY FURTHER CHARGES:

33. On or about the dates set forth below, in the Middle District of Tennessee and

elsewhere, **CONTESSA LYNN HOLLEY** did knowingly transfer, possess and use, in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name, signature, and DEA number belonging to Physician A, as set forth below, knowing that the means of identification belonged to another person, during and in relation to any felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Wire Fraud in violation of 18 U.S.C. § 1343, as enumerated in 18 U.S.C. § 1028A(c)(5):

| Count | Approximate Date | Means of Identification | Description |
|---|---|---|---|
| 11 | 1/9/2022 | Name, signature, and DEA number of Physician A | Prescription for hydrocodone 10 mg |
| 12 | 2/4/2022 | Name, signature, and DEA number of Physician A | Prescription for hydrocodone 10 mg |
| 13 | 2/22/2022 | Name, signature, and DEA number of Physician A | Prescription for hydrocodone 10 mg |

All in violation of Title 18, United States Code, Sections 1028A and 2.

9

Case 1:22-cr-00003   Document 1   Filed 04/04/22   Page 9 of 11 PageID #: 9

## FORFEITURE ALLEGATIONS

THE GRAND JURY FURTHER CHARGES:

34. The allegations contained in this Indictment are hereby realleged and incorporated by reference as if fully set forth in support of this forfeiture allegation.

35. Upon conviction of any of Counts One through Six, or any of Counts Eight Through Thirteen in this Indictment, the defendant, **CONTESSA LYNN HOLLEY**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982 and 981 via Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offense, including but not limited to a money judgment in an amount to be determined, said amount representing the value of the forfeitable property.

36. Upon conviction of Count Seven in this Indictment, **HOLLEY** shall forfeit to the United States of America, pursuant to Title 21, United States Code, Section 853(a):

   (A) Any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such offense; and

   (B) Any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense,

including but not limited to a money judgment in an amount to be determined, representing the aggregate value of the forfeitable property.

## SUBSTITUTE PROPERTY

37. If any such property described above, as a result of any act or omission of **HOLLEY**:

   (A) cannot be located upon the exercise of due diligence;

   (B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been comingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of the substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **HOLLEY** up the value of said property listed above as subject to forfeiture.

A TRUE BILL

FOREPERSON

MARK H. WILDASIN
UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION, CRIMINAL DIVISION

EMILY E. PETRO
TRIAL ATTORNEY, FRAUD SECTION, CRIMINAL DIVISION